**AMERICAN EXPRESS COMPANY and Affiliated Subsidiaries, Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

**No. 00–5111.**

United States Court of Appeals, Federal Circuit.

Aug. 23, 2001.

Stephen D. Gardner, Kronish Lieb Weiner & Hellman LLP, of New York, NY, argued for plaintiff-appellant. With him on the brief was Phillip Gall.

Steven I. Frahm, Attorney, Tax Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief was Richard Farber, Attorney.

Before NEWMAN, GAJARSA, and DYK, Circuit Judges.

DYK, Circuit Judge.

This case presents a simple issue with significant monetary consequences—whether the Internal Revenue Service ("IRS") properly construed the term "services" appearing in Revenue Procedure 71–21, 1971–2 C.B. 549 to exclude annual cardholder payments to American Express for credit commitment, insurance, and luggage tags. We defer to the IRS's reasonable interpretation of its own Revenue Procedure that payments for credit are not for services. Although some portion of the annual cardholder payments were made for services, even under the IRS interpretation of the term, American Express does not challenge the IRS's refusal to accept American Express's attempt to segregate this services portion from the portion that was not for services. Therefore, all the revenue from the fees was properly required to be reported in the year it was received. We accordingly affirm the decision of the Court of Federal Claims denying the refund sought by American Express for the 1987 tax year.

## BACKGROUND

In 1987, American Express issued charge cards which entitled the cardholders to certain financial and travel-related products and services, insurance, and cred-

it. Like virtually all corporations, American Express is an accrual basis taxpayer rather than a cash basis taxpayer. Under the ordinary tax accounting rules governing the reporting of income, the annual fee payments it receives from cardholders are reported as income when earned. Since it receives annual fee payments throughout the year, and the annual fee covers an entire year, one might assume that the fees necessarily were earned partially in the year of payment and partially in the next year. The analysis under the Internal Revenue Code ("I.R.C." or "Code") is, however, more complicated.

Section 446 of the Code provides the Commissioner of the IRS ("Commissioner") with broad discretion to preclude a taxpayer from using a method of accounting that does not clearly reflect income and to require a taxpayer to use a method of accounting that, in the Commissioner's opinion, does clearly reflect income.[1] Acting under that authority, the Commissioner has required accrual basis taxpayers to include prepaid fees as income in the year they were received. The Commissioner reasoned that at the time the taxpayer received the fees, all events had occurred that established the taxpayer's right to the income. Treas. Reg. § 1.446–1(c)(ii); *see also Auto. Club of Mich. v. C.I.R.*, 353 U.S. 180, 188–89, 77 S.Ct. 707, 1 L.Ed.2d 746

1. Section 446(b) provides "[i]f no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary, does clearly reflect income." I.R.C. § 446(b).

Section 446(c) provides that "[s]ubject to the provisions of subsections (a) and (b), a taxpayer may compute taxable income under any of the following methods of accounting—
(1) the cash receipts and disbursements method;
(2) an accrual method;

(3) any other method permitted by this chapter; or
(4) any combination of the foregoing methods permitted under regulations prescribed by the Secretary."

Section 446(e) provides that "[e]xcept as otherwise expressly provided in this chapter, a taxpayer who changes the method of accounting on the basis of which he regularly computes his income in keeping his books shall, before computing his taxable income under the new method, secure the consent of the Secretary."

(1957). In *Automobile Club of Michigan*, 353 U.S. at 184, 77 S.Ct. 707, *American Automobile Association v. United States*, 367 U.S. 687, 697–98, 81 S.Ct. 1727, 6 L.Ed.2d 1109 (1961), and *Schlude v. Commissioner*, 372 U.S. 128, 133–134, 83 S.Ct. 601, 9 L.Ed.2d 633 (1963), the Supreme Court upheld the Commissioner's authority under § 446(b) to require a taxpayer to include income attributable to prepaid fees in the year of receipt.

In 1971, responding to taxpayer concerns about the claimed unfairness of the current year tax accounting of prepaid income, the Commissioner, acting under the authority of § 446 of the Code, issued Rev. Proc. 71–21, 1971–2 C.B. 549[2] to "allow accrual method taxpayers in certain specified and limited circumstances to defer the inclusion of gross income ... of payments received ... in one taxable year for *services* to be performed by the end of the next succeeding taxable year." Rev. Proc. 71–21 § 1 (emphasis added). Under Rev. Proc. 71–21 § 3.14, if a taxpayer satisfies the requirements of Rev. Proc. 71–21, then "the deferral of the inclusion of gross income ... will be treated as an acceptable method of accounting under section 446 of the Code...." No deferral is permitted for income that does not represent payment for services.

Until the 1987 tax year, American Express reported the full amount of one-time annual fee payments from cardholders as income in the month they were billed. On January 1, 1987, American Express changed its financial accounting method to a "Ratable Inclusion Method," under which one-twelfth of the annual fee payments was included as income in the month the fee was billed and in each of the following 11 months. This change apparently coincided with a change in accounting standards to permit such a deferral. Financial Accounting Standards Board of the Financial Accounting Foundation, Statement of Financial Accounting Standards No. 91 (Dec.1986).[3] On June 26, 1987, American Express filed Applications for Change in Method of Accounting (Forms 3115) with the IRS requesting permission to use the Ratable Inclusion Method for income tax accounting purposes but continued to report cardholder annual fee payments it billed in 1987 as income in the 1987 tax year.

The IRS took the position that "[t]he portion of the [annual] fees attributable to credit and goods are not deferrable under Rev. Proc. 71–21 because the revenue procedure applies only to advance payments for services performed by the taxpayer

2. Rev. Proc. 70–21, 1970–2 C.B. 501, the precursor to Rev. Proc. 71–21, was issued in 1970. Rev. Proc. 71–21 made minor modifications (not relevant here) to Rev. Proc. 70–21.

3. Paragraph 10 of this Statement provided that "[a]vailable lines of credit under credit card and similar charge card arrangements are loan commitments, and fees collected in connection with such cards (credit card fees) are viewed in part as being loan commitment fees. However, those fees generally cover many services to cardholders. Accordingly, *fees that are periodically charged to cardholders shall be deferred and recognized on a* *straight-line basis over the period the fee entitles the cardholder to use the card.* This accounting shall also apply to other similar card arrangements that involve an extension of credit by the card issuer." (emphasis added).

It is, of course, well established that tax and accounting treatments may differ, and that the refusal of the IRS to follow accounting rules for tax purposes does not itself render the IRS approach arbitrary. *Thor Power Tool Co. v. Comm'r*, 439 U.S. 522, 542, 99 S.Ct. 773, 58 L.Ed.2d 785 (1979); *Frank Lyon Co. v. United States*, 435 U.S. 561, 577, 98 S.Ct. 1291, 55 L.Ed.2d 550 (1978).

and credit and goods are not services." Letter from Paul M. Ritenour, Chief Branch 8, IRS, to Daniel B. Rosenbaum, esq., Outside Counsel to American Express 3 (August 30, 1989). The IRS relied in part on General Counsel Memorandum (G.C.M.) 39,434, 1985 IRS GCM LEXIS 99, in which the IRS had previously interpreted bank credit card fees to represent loan commitment fees for a property right—the right to use money—rather than a fee for services. The IRS offered American Express the opportunity to segregate payments for items that were not services, so that the services portion could be deferred pursuant to the Revenue Procedure, but unless American Express could make an adequate segregation, the IRS required that "the entire annual card fee must be included in the taxpayers' gross income in the tax year in which the fees are received." Letter from Mr. Ritenour at 3. American Express tried but failed to convince the IRS that its proposed segregation was satisfactory.

In 1996, American Express filed a timely claim for refund of income taxes for the 1987 tax year based on the requested change in accounting method. The IRS denied the refund, and American Express filed suit in the Court of Federal Claims on or about September 15, 1997. Based on stipulated facts, the parties cross-moved for summary judgment. On June 30, 2000, the Court of Federal Claims denied the refund and granted the IRS's motion for summary judgment because "G.C.M. 39,-434 and the text of Rev. Proc. 71–21 pro-

vide[d] an adequate basis in law for the Commissioner's decision that the card fees in issue did not fall within the specified and limited circumstances of Rev. Proc. 71–21." *Am. Express Co. v. United States,* 47 Fed. Cl. 127, 133 (2000). In other words, the court held that "[t]he text of Rev. Proc. 71–21 is not in conflict with the Commissioner's determination that the card fees were not paid for services and therefore could not be ratably included in gross income," *id.* at 132, and that "G.C.M. 39,434 could have reasonably been used by the Commissioner for legal guidance in reaching his decision in this case that card fees were not payment for services under Rev. Proc. 71–21." *Id.* at 133. American Express timely appealed to this court.

## DISCUSSION

This case involves no issue of statutory construction. Nor does it involve any questions as to the validity of the Revenue Procedure, which is plainly statutorily authorized. *See* I.R.C. § 446(b); *United States v. Mead Corp.,* —— U.S. ——, ——, 121 S.Ct. 2164, 2171, 150 L.Ed.2d 292 (2001). Rather, the sole issue is whether the IRS properly interpreted its own Revenue Procedure.

We consider first whether the IRS properly interpreted the Procedure's reference to services as not including fees for the acquisition of credit. The credit float feature—that is, the ability to charge purchases and to pay later—is a common feature of all of the cards involved.[4]

---

4. American Express argues that no part of the card fees should be treated as a fee to acquire credit because interest was charged on the credit. This confuses two separate credit features on the cards the right to defer payments from the date of purchase to the date of payment (sometimes called the float feature)

and the right to make payments in installments. An interest charge was imposed only with respect to the latter feature which was available to holders of some cards. At least part of the annual fee was payment for the float feature.

■ There is nothing on the face of IRS Rev. Proc. 71–21 that defines the term "services," and American Express offers no dictionary definition that tells us, one way or the other, whether the extension of credit constitutes a form of service.[5] American Express relies on a footnote in the Supreme Court's *American Automobile Association* decision, describing "services" offered by the taxpayer to "include furnishing road maps, routing, tour books, etc.; emergency road service through contracts with local garages; bail bond protection; personal automobile accident insurance and theft protection; ... motor license procurement, brake and headlight adjustment service, notarial duties and advice in the prosecution of small claims." 367 U.S. at 689 n. 2, 81 S.Ct. 1727 (1961). American Express contends that the term "services" in Rev. Proc. 71–21 must be construed to include credit, because it is similar to the listed items. However, although the *American Automobile Association* case was an important predicate to the issuance of Rev. Proc. 71–21, the Supreme Court has suggested that we should not place undue weight on statements appearing in footnotes. *CBS, Inc. v. Fed. Communication*

*Comm'n,* 453 U.S. 367, 385, 101 S.Ct. 2813, 69 L.Ed.2d 706 (1981); *Rivet v. Regions Bank,* 522 U.S. 470, 477, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998). There is no indication that the IRS intended to adopt the Supreme Court's definition in its Revenue Procedure. Indeed, the stated purpose of Rev. Proc. 71–21 was to "implement an administrative decision, made by the Commissioner *in the exercise of his discretion* under section 446 of the Internal Revenue Code of 1954,"Rev. Proc. 71–21 § 1, 1971–2 C.B. 549 (emphasis added), and does not indicate that the Revenue Procedure in any way adopted the Supreme Court footnote's definition of services. In any event, the Supreme Court footnote in *American Automobile Association* makes no reference to credit's being a service. We conclude that the term "services" as used in the Revenue Procedure is ambiguous as to whether it includes credit.

The IRS has interpreted its Revenue Procedure to exclude credit from the definition of services. The IRS's interpretation is reflected in General Counsel G.C.M. 39,434, in which the IRS determined that bank credit card fees were loan commitment fees for a property right—the right to use money—rather than for services.

---

5. It is appropriate to consult dictionaries to discern the ordinary meaning of a term not explicitly defined by statute or regulation. *Int'l Bus. Machs. Corp. v. United States,* 201 F.3d 1367, 1372 (Fed.Cir.2000), *cert. denied,* —— U.S. ——, 121 S.Ct. 1167, 148 L.Ed.2d 1025 (2001); *Best Power Tech. Sales Corp. v. Austin,* 984 F.2d 1172, 1177 (Fed.Cir. 1993). Dictionary definitions of "service" include "an act done for the benefit or at the command of another"; "the performance of work commanded or paid for by another"; and "conduct or performance that assists or benefits someone or something." Webster's Third New International Dictionary 2075 (1968). None of these definitions, however, resolves the issue of whether credit or insurance is a "service."

American Express also relies on authorities which refer to the provision of bank loans as a "service." *Burbank Liquidating Corp. v. Comm'r,* 39 T.C. 999, 1009–10, 1963 WL 1566 (1963) (stating that "the business of a savings and loan company could properly be described as 'rendering the service' of making loans"), *aff'd in part and rev'd in part on other grounds,* 335 F.2d 125 (9th Cir.1964); Rev. Rul. 72–238, 1972–1 C.B. 65 (applying the same characterization to a bank that originates mortgage loans). But these general statements about the nature of a taxpayer's business hardly amount to the articulation of an accepted definition of "services."

*Id.* at *1–2. The IRS interpretation is also reflected in its decision denying American Express's Applications for Change in Method of Accounting pursuant to the Revenue Procedure. American Express argues that no deference is due these interpretations. We cannot agree.

■ The Supreme Court has firmly established that agency interpretations of their own regulations are entitled to substantial deference. For example, in *Auer v. Robbins,* 519 U.S. 452, 461–62, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997), the Supreme Court held that deference was required to be given to the Secretary of Labor's interpretation of the Department of Labor's own regulation in determining whether certain public-sector employees were exempted from mandatory overtime pay under the Fair Labor Standards Act, even though the Secretary's interpretation was contained in an amicus brief to the Court. *See also Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994) (noting that the agency's interpretation must be given " 'controlling weight unless it is plainly erroneous or inconsistent with the regulation' ") (quoting *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945)); *United States v. Cleveland Indians Baseball Co.,* 532 U.S. 200, 121 S.Ct. 1433, 1445, 149 L.Ed.2d 401 (2001) (giving "substantial judicial deference" to the IRS's reasonable longstanding interpretation of its own regulations); *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965) (when " 'an interpretation of an administrative regulation [is required,] a court must necessarily look to the administrative construction of the regulation if the meaning of the words used is in doubt' ") (quoting *Seminole Rock,* 325 U.S. at 413–14, 65 S.Ct. 1215).

Accounting determinations are entitled to particular deference, *Cleveland Indians Baseball Co.,* 532 U.S. at ——, 121 S.Ct. at 1444, *Brown v. Helvering,* 291 U.S. 193, 204, 54 S.Ct. 356, 78 L.Ed. 725 (1934), in view of the broad authority conferred to the Commissioner under section 446, *Dana Corp. v. United States,* 174 F.3d 1344, 1347–48 (Fed.Cir.1999), *Kohler Co. v. United States,* 124 F.3d 1451, 1457 (Fed. Cir.1997).

■ American Express argues that an interpretation expressed in a General Counsel Memorandum or in a decision on a Revenue Procedure is not entitled to deference under the Supreme Court's decision in *Christensen v. Harris County,* 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000), which states that interpretations in opinion letters that lack the force of law are not entitled to *Chevron* deference. If we were concerned with *Chevron* deference—that is, deference to the interpretation of a statute by an administrative agency charged with enforcing the statute the IRS might have difficulty convincing us that substantial deference is due. The interpretation of Rev. Proc. 71–21 contained in the General Counsel Memorandum and the IRS decision under the Revenue Procedure is not reflected in a regulation adopted after notice and comment and probably would not be entitled to *Chevron* deference. *See Mead,* —— U.S. at —— – ——, 121 S.Ct. at 2173–75; *Christensen,* 529 U.S. at 587, 120 S.Ct. 1655; *Bellas v. CBS, Inc.,* 221 F.3d 517, 530 n. 12 (3d Cir.2000). Here, however, as noted above, we are not dealing with an agency's interpretation of a statute and issues of *Chevron* deference, but with the IRS's interpretation of an ambiguous term in its own Revenue Procedure. In such circumstances, substan-

tial deference is paid to an agency's interpretations reflected in informal rulings. *Auer,* 519 U.S. at 461, 117 S.Ct. 905; *Cleveland Indians Baseball Co.,* 532 U.S. at ——, 121 S.Ct. at 1445; *So. Calif. Edison Co. v. United States,* 226 F.3d 1349, 1356–57 (Fed.Cir.2000). In the context of tax cases, the IRS's reasonable interpretations of its own regulations and procedures are entitled to particular deference. *Cleveland Indians Baseball Co.,* 532 U.S. at ——, 121 S.Ct. at 1445.

Finally, American Express relies on a variety of other court decisions, including *Hewlett–Packard Co. v. United States,* 71 F.3d 398 (Fed.Cir.1995), and argues that they hold that no deference is due.

In *Hewlett–Packard,* we rejected the Commissioner's factual determination that a taxpayer's pool of rotable spare parts used to repair computers it had sold qualified as inventory rather than a capital asset under the Code, but the context there was entirely different. In that case, both the taxpayer and the government agreed that the case was governed by a Treasury regulation which provided in pertinent part that: "[i]n order to reflect taxable income correctly, inventories at the beginning and end of each taxable year are necessary in every case in which the production, purchase, or *sale of merchandise* is an income-producing factor." 71 F.3d at 400 (quoting Treas. Reg. § 1.471–1 (emphasis added)). In particular, the issue was "whether the Commissioner properly rejected, as not clearly reflecting income, [the taxpayer's] accounting treatment of its rotable spare parts pool as a capital asset which it depreciated, and required the [taxpayer] to treat the pool as inventory." *Hewlett–Packard,* 71 F.3d at 400. There was no issue concerning the interpretation of the regulation. Rather, the

question was whether, as a factual matter, "the exchange of rotable spare parts for the original parts in [the taxpayer's] customers' computers constituted the 'sale of merchandise' as an 'income-producing factor.' " *Id.* (quoting Treas. Reg. § 1.471–1). This court found that the "undisputed facts show that Apollo's maintenance business was a service business . . . . [and that in] any realistic sense Apollo's substitution of a rotable spare part for a malfunctioning original part in a customer's computer was not a sale of that part to the customer . . . . [and] not an 'income producing factor' in the conduct of Apollo's repair business." *Id.* at 400 (quoting Treas. Reg. § 1.471–1). Thus, this court simply held that no deference was due to the IRS's factual determination made in the course of the audit process.

■ In its opening brief American Express agreed that we are not confronted here with a factual issue, since "[t]he determination of whether, on the basis of the stipulated facts, the Card Fees were payments for services is a legal question." (citing *Garvey, Inc. v. United States,* 726 F.2d 1569, 1571 (Fed.Cir.), *cert. denied,* 469 U.S. 823, 105 S.Ct. 99, 83 L.Ed.2d 44 (1984)). Moreover, we are not here confronted with a mere audit determination, which may not draw deference in any event. *Hewlett–Packard* thus has no bearing on our obligation to defer to the IRS's interpretations of the Revenue Procedure involved here.

■ American Express also relies on *Barnett Banks of Florida v. Commissioner,* 106 T.C. 103, 1996 WL 85847 (1996) and *Signet Banking Corp. v. Commissioner,* 106 T.C. 117, 1996 WL 85845 (1996), *aff'd,* 118 F.3d 239 (4th Cir.1997), to argue that the annual fee payments it received

should be characterized as "services." We, of course, are not bound by decisions of the Tax Court. In any event, we are not persuaded that either case correctly analyzes the question whether credit constitutes "services." Both *Barnett Banks* and *Signet* (decided on the same day by different judges of the Tax Court) involved banks that issued credit cards and charged annual fees to their cardholders, which entitled the cardholders to credit. In *Barnett Banks*, the fee was refundable, 106 T.C. at 107, and there was no mention of what consideration was received for payment of the annual fee. On that basis, the Tax Court held that the entire annual fee was ratably deferrable under Rev. Proc. 71–21 because the "cardholders paid annual fees and received services," and because the annual fee was refundable on a *pro rata* basis if the card were cancelled by the taxpayer. *Barnett Banks*, 106 T.C. at 110–11. In *Signet*, the annual fee was non-refundable and, according to the cardholder agreement, was paid in consideration for opening an account and establishing a credit limit. 106 T.C. at 122. Therefore, the Tax Court held that no part of the annual fee was deferrable as a payment for a "service" under Rev. Proc. 71–21 because the taxpayer performed all the acts it was required to perform when the card was issued and a credit limit was established for the cardholder. 106 T.C. at 126–27. We are not persuaded by the reasoning in either case. Whether or not credit provided to the cardholder is a "service" under Rev. Proc. 71–21 cannot hinge on such factual distinctions as whether or not the fee is refundable or on statements made in the cardholder agreement.[6]

 In short, we agree that deference is due to the IRS interpretation of its own Revenue Procedure reflected both in the General Counsel memorandum and in the IRS's decisions denying American Express's applications to change its accounting method. Because the interpretation is reasonable, it attracts substantial judicial deference, and we conclude that the IRS properly determined that credit fees were not for services. Since American Express does not claim that the amounts charged for credit can be segregated, we hold that the refund was properly denied.

## CONCLUSION

For the forgoing reasons, we affirm the decision of the Court of Federal Claims.

*AFFIRMED.*

## COSTS

No costs.

---

6. The Fourth Circuit, in affirming the Tax Court's decision in *Signet*, found that the facts in that case "suggest[ed] that the annual fee represented a general revenue raising measure as opposed to an attempt to charge users for the cost of services rendered," *Signet*, 118 F.3d at 241, and therefore held that the entire fee was properly included at the time it was charged.