# United States Court of Appeals for the Federal Circuit

05-3272

GARY GOSE,

Petitioner,

v.

UNITED STATES POSTAL SERVICE,

Respondent.

Michael Allen McNew, Doll, Jansen & Ford, of Dayton, Ohio, for petitioner.

David C. Belt, Appellate Counsel, United States Postal Service, of Washington, DC, for respondent. With him on the brief was Lori J. Dym, Chief Counsel, Appellate Litigation. Also on the brief was Peter D. Keisler, Assistant Attorney General, Civil Division. Of counsel were David M. Cohen, Director; Todd M. Hughes, Assistant Director; and James W. Poirier, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC.

Appealed from: United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

05-3272

GARY GOSE,

Petitioner,

v.

UNITED STATES POSTAL SERVICE,

Respondent.

_____

DECIDED: June 14, 2006

_____

Before, RADER, SCHALL, and GAJARSA, <u>Circuit Judges</u>.

GAJARSA, <u>Circuit Judge</u>.

This is an appeal from the Merit System Protection Board ("MSPB" or "Board"), which upheld the removal of petitioner Gary Gose ("Gose") from his position as City Carrier with the United States Postal Service ("USPS" or "the agency"), for allegedly violating an agency regulation while working pursuant to the terms of a last chance agreement ("LCA"). This court has jurisdiction "of an appeal from a final order or final decision of the Merit Systems Protection Board, pursuant to sections 7703(b)(1) and 7703(d) of title 5[.]" 28 U.S.C. § 1295. For the reasons discussed below, we reverse the decision of the Board and remand for further proceedings consistent with this opinion.

## I.    BACKGROUND

A.    Conduct Leading to the Last Chance Agreement

On August 25, 2003, the agency proposed Gose's removal, and on September 12, 2003, the deciding official found that removal was warranted. The official concluded that Gose had "fail[ed] to use [a] satchel in the delivery of the mail" and had therefore failed to "observe our safety rules and policies." The deciding official also stated that Gose had recently been "present for the service-safety talks concerning this subject" and had "acknowledged that [he] was aware of the requirement to use the satchel." As evidence of Gose's apparent propensity for not following instructions, the deciding official cited several suspensions for "Failure to Perform Your Duties in a Conscientious and Effective Manner / Failure to Follow Instructions" and one suspension for "Failure to Perform Your Duties in a Conscientious and Effective Manner / Unauthorized Extension of Lunch."

As a final resolution of these matters, Gose entered into a LCA with the agency on October 31, 2003. A key provision of the LCA was that Gose would "comply with all the applicable policies, rules and regulations with regard to his employment as a condition of this last chance agreement. Failure to comply . . . will constitute a basis that will result in Mr. Gose's removal . . . ."

B.    Gose's Alleged Violation of the LCA—Drinking "in a public place" While in Uniform.

On March 29, 2004, Douglas Potter ("Potter"), Customer Service Manager at the Wright Brothers Branch Post Office, proposed to remove Gose for violating the terms of the LCA. Potter wrote that on February 27, 2004, the Post Office had received a

05-3272                                          2

customer concern letter regarding Gose's drinking while in uniform at Veterans of Foreign Wars ("VFW") Post 9927, Kettering, Ohio. There were thirty signatures on the letter. Apparently, the members of the VFW were offended by the sight of someone drinking in uniform. As one member opined, "Well, I'm retired military. . . . You just don't drink in uniform in a public place." The administrative judge ("AJ") never expressly considered Gose's argument that the VFW had written the letter to his employer in retaliation for Gose's complaining about alleged accounting discrepancies in the VFW post's books. The motives of the VFW, however, are not relevant to this appeal and will not be further considered.

The underlying facts were never in dispute. In fact, Gose estimated that he had consumed three thousand mixed drinks at the VFW since 1988 and acknowledged that he often drank there while wearing his uniform. Rather, the dispute centered on whether Gose's actions had violated any postal "policy, rule or regulation." If so, then according to the terms of the LCA, Gose's removal would be warranted.

Potter stated that Gose's actions had indeed violated several USPS standards of conduct as expressed in the Employee and Labor Relations Manual ("ELM"). These provisions were (1) § 661.3(f) (engaging in actions "whether or not specifically prohibited by the Code, which might result in or create the appearance of . . . . affecting adversely the confidence of the public in the integrity of the Postal Service"); (2) § 661.53 (engaging in "conduct prejudicial to the Postal Service"); (3) § 661.54 ("drink[ing] intoxicating beverages in a public place while in uniform");[1] and (4) § 666.2

---

[1] See also 39 C.F.R. § 447.25(e) ("No employee shall drink intoxicating beverages in a public place while in uniform.").

(failing to "conduct [himself] during and outside of working hours in a manner which reflects favorably upon the Postal Service . . . .").

The deciding official, David Ashworth ("Ashworth"), Postmaster of Dayton, Ohio, agreed with the proposal to remove Gose. In his letter of removal, Ashworth stated that he believed that Gose's "acknowledgements and admissions [of the underlying facts] in this matter demonstrate[d] that 'Just Cause' existed for [his] removal." He further stated that Gose's "actions in not observing Postal Service rules and regulations . . . violates the employee standards of conduct for employees as expressed in the Employee and Labor Relations Manual (ELM) that forbid your drinking of intoxicating beverages in a public place while in uniform." The deciding official found that Gose's conduct was prejudicial to the Postal Service and served to undermine public confidence in the Service's integrity "as evidenced by the corroborated initial customer complaint."

Ashworth also stated that he had reviewed and considered the Douglas factors,[2] including: (1) the seriousness of the offense and its prejudicial effect upon the agency's mission; (2) that other employees had received removal notices for similar offenses; (3) an absence of mitigating circumstances, including a lack of remorse;[3] (4) that Gose was

---

[2]    See Douglas v. Veterans Admin., 5 M.S.P.R. 280, 305-06 (1981).
[3]    As for lack of remorse, Ashworth stated:

> I am unable to find mitigating circumstances for your response that you needed to have a membership card to gain entry into the VFW. I have considered your seeming lack of remorse for the impact your continued drinking while in uniform had with our customers. Postal records in this file, and your own acknowledgement, indicates that you were previously notified of your responsibility regarding drinking in uniform. You have not acted appropriately in your own behalf in this matter even after being forewarned.

employed pursuant to a voluntary LCA, and (5) that Gose could not be rehabilitated as an employee. He also cited the LCA, which clearly provided for removal as the next step of discipline.

C. Board Review

Gose appealed his removal to the Board, arguing that "[t]he only regulation which the Agency has heretofore cited to and alleged that the Appellant has violated is Section 661.54 Employee Relations – Conduct Use of Intoxicating Beverages." He further argued that he had not violated the provision on drinking in a public place while in uniform because "he ha[d] limited his after work drinking to a <u>private club</u> . . . ." (emphasis added). Gose argued that "[t]he Agency fails to acknowledge a distinction between public and private places, yet the rule or regulation with which Appellant is charged, specifically limits itself to 'public place.'"

Because Gose does not dispute that he drank at the VFW post while in uniform while the LCA was in effect, the dispute in this case centers solely on whether or not the VFW is a "public place," as that phrase is used in the relevant postal regulation. During the appeal to the MSPB, Ashworth testified before the administrative judge ("AJ") that to the Postal Service "any place is a public place that we serve. . . . [E]very citizen is a customer of ours." Ashworth explained that the VFW "is a private place for membership, but as far as the Postal Service [is concerned] – as I say, any place . . . is public." Similarly, Tod O'Reilly ("O'Reilly"), Manager of Customer Service, testified that "[postal employees] are always in public" except "when we're in our own homes."

---

It is not clear whether Ashworth ever entertained the possibility that Gose was not exhibiting a "lack of remorse" but rather felt he had been wrongly accused. After all, whether indignation or remorse is appropriate turns entirely on whether or not Gose had actually violated an ELM provision. Gose believes that he did not.

The AJ rejected Gose's argument that the VFW is not a public place, noting the testimony of O'Reilly and Ashworth that "a public place is anywhere that Postal Service customers can be found." The AJ adopted this definition, stating that "[t]he intent of the Postal Service policy is to prevent its uniformed employees from drinking intoxicating beverages in public view, a circumstance clearly present in this case based on complaints from members of the public regarding his conduct." The AJ concluded that "[b]ecause numerous Postal Service customers complained about the appellant's conduct, I find the conduct occurred in public, not in private." The Board subsequently rejected Gose's petition for review, and the decision of the AJ became final.

## II. DISCUSSION

Gose argues that the Board committed several errors, including in its interpretation of the Postal Service regulation that prohibits employees from drinking "in a public place" while in uniform. Because we hold that the Board did err in this regard, we reverse the Board's decision without consideration of Gose's other assignments of error.

A. Standard of Review

Here we are reviewing the Board's construction of a regulation, including its decision to defer to the interpretation proffered by the agency. See Douglas v. Veterans Admin., 5 M.S.P.R. 280, 287 (1981) ("[I]t is the final orders or decisions of the Board which constitute the acts of 'the Government' for purposes of judicial review."). In so doing, we note as an initial matter that provisions of the ELM do in fact constitute "regulations." See 39 U.S.C. § 401 ("The Postal Service shall have the following general powers . . . . (2) to adopt, amend, and repeal such rules and regulations as it

deems necessary to accomplish the objectives of this title[.]"); 39 C.F.R. § 211.2(a)(2) (1988) (providing that the ELM is a part of the USPS regulations); see also Wood v. Merit Sys. Prot. Bd., 938 F.2d 1280, 1282 (Fed. Cir. 1991).

"This court must affirm the Board's decision unless it is: '(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence.'" Tunik v. Merit Sys. Prot. Bd., 407 F.3d 1326, 1330 (Fed. Cir. 2005) (quoting 5 U.S.C. § 7703(c) (2000)). We have held that "[a]n abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." Lacavera v. Dudas, 441 F.3d 1380, 1383 (Fed. Cir. 2006) (internal quotations omitted); see also O'Keefe v. U.S. Postal Serv., 318 F.3d 1310, 1314 (Fed. Cir. 2002) ("The Board necessarily abuses its discretion when it rests its decision on factual findings unsupported by substantial evidence." (internal quotations omitted)). The construction of a regulation is a question of law. Kent v. Principi, 389 F.3d 1380, 1384 (Fed. Cir. 2004) ("[I]nterpretation of a statute or regulation is a question of law . . . .") (internal quotations omitted). We review questions of law de novo. See, e.g., Wallace v. Office of Pers. Mgmt., 283 F.3d 1360, 1361 (Fed. Cir. 2002).

B.      Regulatory Construction

Next, we turn to the proper construction of the regulation Gose is accused of violating. As a general rule, we must defer to an agency's interpretations of the regulations it promulgates, as long as the regulation is ambiguous and the agency's

interpretation is neither plainly erroneous nor inconsistent with the regulation. See Gonzales v. Oregon, 126 S. Ct. 904, 914 (2006) ("An administrative rule may receive substantial deference if it interprets the issuing agency's own ambiguous regulation." (citing Auer v. Robbins, 519 U.S. 452, 461 (1997))); Christensen v. Harris County, 529 U.S. 576, 588 (2000) ("In Auer, we held that an agency's interpretation of its own regulation is entitled to deference. But Auer deference is warranted only when the language of the regulation is ambiguous.") (citations omitted); Bowles v. Seminole Rock, 325 U.S. 410, 413-14 (1945) ("[In] an interpretation of an administrative regulation a court must necessarily look to the administrative construction of the regulation if the meaning of the words used is in doubt. The intention of Congress or the principles of the Constitution in some situations may be relevant in the first instance in choosing between various constructions. But the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation. . . . Our only tools, therefore, are the plain words of the regulation and any relevant interpretations of the Administrator."); cf. Lacavera, 441 F.3d at 1383 (holding that "'an agency's interpretation of its own regulations is entitled to substantial deference and will be accepted unless it is plainly erroneous or inconsistent with the regulation.'" (quoting Star Fruits S.N.C. v. United States, 393 F.3d 1277, 1282 (Fed. Cir. 2005)).

We defer even more broadly to an agency's interpretations of its own regulations than to its interpretation of statutes, because the agency, as the promulgator of the regulation, is particularly well suited to speak to its original intent in adopting the regulation. See Cathedral Candle Co. v. U.S. Int'l Trade Comm'n, 400 F.3d 1352,

1363-64 (Fed. Cir. 2005) ("[I]t is well settled that an agency's interpretation of its own regulations is entitled to broad deference from the courts. Deference to an agency's interpretation of its own regulations is broader than deference to the agency's construction of a statute, because in the latter case the agency is addressing Congress's intentions, while in the former it is addressing its own.") (citations omitted); Am. Express Co. v. United States, 262 F.3d 1376, 1382-83 (Fed. Cir. 2001) (holding that because "we are not dealing with an agency's interpretation of a statute and issues of Chevron deference, but with the IRS's interpretation of an ambiguous term in its own Revenue Procedure . . . substantial deference is paid to an agency's interpretations reflected in informal rulings").

Consequently, deference is appropriate even if other interpretations of the regulation may accord somewhat better with the regulatory language than does the Secretary's interpretation. See Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 515 (1994) ("The Secretary's interpretation of the anti-redistribution principle is thus far more consistent with the regulation's unqualified language than the interpretation advanced by the petitioner. But even if this were not so, the Secretary's construction is, at the very least, a reasonable one, and we are required to afford it 'controlling weight.'" (citing Seminole Rock, 325 U.S. at 414) (emphasis added)).

Deference is particularly appropriate when the agency interpretation has been consistently applied. See Ehlert v. United States, 402 U.S. 99, 105 (1971) ("[S]ince the meaning of the language [of the regulation] is not free from doubt, we are obligated to regard as controlling a reasonable, consistently applied administrative interpretation if the Government's be such." (citing Immigration Serv. v. Stanisic, 395 U.S. 62, 72

05-3272           9

(1969); Thorpe v. Housing Authority, 393 U.S. 268, 276 (1969); Udall v. Tallman, 380 U.S. 1, 16-17 (1965); Seminole Rock, 325 U.S. at 413-14) (emphasis added))); see also Seminole Rock at 417-18 ("Any doubts concerning this interpretation of [the regulation] are removed by reference to the administrative construction . . . [as evidenced by] a bulletin issued by the Administrator concurrently with the . . . Regulation[,] . . . his First Quarterly Report to Congress . . . [and] in the countless explanations and interpretations given to inquirers affected by this type of maximum price determination.").

Conversely, "an agency's interpretation of a statute or regulation that conflicts with a prior interpretation is 'entitled to considerably less deference' than a consistently held agency view . . . ." Thomas Jefferson Univ., 512 U.S. at 515 (emphasis added) (quoting INS v. Cardoza-Fonseca, 480 U.S. 421, 446, n.30 (1987) (quoting Watt v. Alaska, 451 U.S. 259, 273 (1981))). Watt in turn cites General Electric Co. v. Gilbert; Gilbert provides a link to Skidmore deference. Gilbert, 429 U.S. 125, 143 (1976) ("We have declined to follow administrative guidelines in the past where they conflicted with earlier pronouncements of the agency. In short, while we do not wholly discount the weight to be given the 1972 guideline, it does not receive high marks when judged by the standards enunciated in Skidmore, supra.") (citations omitted) (referring to Skidmore v. Swift & Co., 323 U.S. 134 (1944)). Just as an agency's inconsistent interpretation of its regulation detracts from the deference we owe to that interpretation, so does evidence that the proffered interpretation runs contrary to the intent of the agency at the time of enactment of the regulation. See Gardebring v. Jenkins, 485 U.S. 415, 430 (1988) ("[W]hen it is the Secretary's regulation that we are construing, and when there is

no claim in this Court that the regulation violates any constitutional or statutory mandate, we are properly hesitant to substitute an alternative reading for the Secretary's <u>unless</u> that alternative reading is compelled by the regulation's plain language or by <u>other indications of the Secretary's intent at the time of the regulation's promulgation</u>.") (emphases added).

Legitimate agency interpretations may be made even during the very administrative determination that has become the subject of review. See <u>Cathedral Candle</u>, 400 F.3d at 1364 ("That generous degree of deference is due to an agency interpretation of its own regulations even when that interpretation is offered in the very litigation in which the argument in favor of deference is made." (citing <u>Auer</u>, 519 U.S. 452, 461-62)). However, the interpretation must truly be one that had been applied by the agency, either prior to or, at the latest, during the exercise of its administrative powers in the present matter. An "interpretation" is therefore not a position advanced by the agency for the first time before the Board or in a court of review. Such an "interpretation" is then no more than a litigation position to which no deference is due. See, e.g., <u>Bowen v. Georgetown Univ. Hosp.</u>, 488 U.S. 204, 212 (1988) ("[W]e have declined to give deference to an agency counsel's interpretation of a statute where the agency itself has articulated no position on the question, on the ground that 'Congress has delegated to the administrative official and not to appellate counsel the responsibility for elaborating and enforcing statutory commands.'" (quoting <u>Investment Co. Inst. v. Camp</u>, 401 U.S. 617, 628 (1971))); <u>id.</u> at 213 ("Deference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate."); <u>Investment Co.</u>, 401 U.S. at 628 ("It is the administrative official and not

appellate counsel who possesses the expertise that can enlighten and rationalize the search for the meaning and intent of Congress."); see also Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168-69 (1962) ("The courts may not accept appellate counsel's post hoc rationalizations for agency action; Chenery requires that an agency's discretionary order be upheld, if at all, on the same basis articulated in the order by the agency itself . . . ." (citing SEC v. Chenery Corp., 332 U.S. 194 (1947))).  Nonetheless, the standard for deference is often easily met.  See, e.g., Auer, 519 U.S. at 462 (finding that "[t]here is simply no reason to suspect that the interpretation [offered by an agency in a legal brief] does not reflect the agency's fair and considered judgment on the matter in question").

Finally, the interpretation either has to be that of the Secretary or properly imputed to him in some way.  See, e.g., Thomas Jefferson Univ., 512 U.S at 517 (implying that deference might be improper if the Secretary's "fiscal intermediary" had displayed a contrary understanding of the regulation and "if petitioner could show that such [action] was approved by – or even brought to the attention of – the Secretary or her designate at the time").

C.    Analysis

The agency argues that it adjudicated Gose's dismissal by interpreting "public place" to mean "a place where postal customers are located" and that because this interpretation is plausible, it is entitled to deference.[4]  As we explained above, in order

---

[4]    We reject the agency's argument that we can sustain its removal action based on Gose's alleged violations of other statutory provisions.  Agency action must be sustained, if at all, on the actual grounds relied on by the agency.  See, e.g., Burlington Truck Lines, 371 U.S. at 168-69.  The letter of decision clearly states as grounds for removal "violat[ion of] the employee standards of conduct for employees as expressed

to merit <u>Seminole Rock</u> deference, the agency's interpretation (1) must have been directed to regulatory language that is unclear; (2) must have been actually applied in the present agency action; and (3) must not be plainly erroneous or inconsistent with the regulation. In addition, we consider the consistency <u>vel non</u> with which the agency has applied that interpretation. <u>See</u> <u>supra</u> Part II.B. The agency's interpretation clearly passes the first prong of the tripartite test, as the regulation is vague as to the scope of the phrase "in a public place." It fails the second two prongs for the reasons discussed below.

Turning first to the "actual application" prong, we observe that the salient question is whether the agency actually based its decision to remove Gose on the interpretation of "public place" as anywhere that a Postal Service customer can be found. We must ensure that the agency is not now masquerading a post hoc rationalization as a then-existing "interpretation." <u>See</u> <u>Burlington Truck Lines</u>, 371 U.S. at 168-69 (declining to defer to "appellate counsel's post hoc rationalizations for agency action"). The problem here is that the agency asks us to accept the after-the-fact testimony before the Board of, <u>inter alia</u>, the deciding official as proof that it had actually decided the Gose matter by applying a particular construction of the regulation. Clearly, an agency's mere application of law to facts in a particular action cannot be read to establish an implicit "agency interpretation" of the regulation. Such a rule would vitiate the requirement that agency interpretations be legitimate <u>precursors</u> to an application of

---

in the Employee and Labor Relations Manual (ELM) that forbid your drinking of intoxicating beverages in a public place while in uniform." Although other "catch-all" ELM provisions were mentioned in the proposal letter, they did not constitute the basis for the deciding official's action.

law to fact, rather than post hoc rationalizations, by creating de facto per se deference in every case.

Thus, the question becomes whether it was arbitrary and capricious for the Board to conclude, based on the evidence before it, that the deciding official had in fact applied a particular "interpretation" of the regulation in his decision, even though his decision letter made absolutely no mention of any such interpretation. We hold that it was. On appeal to the MSPB, however, the AJ improperly overlooked this shortcoming, and relied principally on testimony by the deciding official (Ashworth) that to the Postal Service "any place is a public place that we serve. . . . [E]very citizen is a customer of ours." The AJ then deferred to the agency's interpretation of "public place," stating in his initial decision that he "agree[d] with the testimony of Messrs. O'Reilly [the local customer service manager] and Ashworth [postmaster]," that "a public place is anywhere that Postal Service customers can be found." The AJ further implied that this interpretation was consistent with "[t]he intent of the Postal Service policy to prevent its uniformed employees from drinking intoxicating beverages in public view." There was, however, no evidence before the Board to suggest the intent of the agency in promulgating the regulation.

The AJ erred in deferring to the agency's interpretation. Where a letter of removal is silent about the agency's interpretation of its regulation, the existence and application of such an interpretation cannot be established principally by the after-the-fact testimony of agency officials regarding what they had apparently thought but failed to articulate at the relevant time.

Moreover, according to Seminole Rock, no deference is due to an agency interpretation of a reference that is "plainly erroneous or inconsistent with the regulation." 325 U.S. at 414. The agency asks us to read ELM § 661.54 (prohibiting "drink[ing] intoxicating beverages in a public place while in uniform") and to adopt as our definition of "public place" their proffered interpretation—namely, "anywhere that Postal Service customers can be found." We further note, in this regard, the hearing testimony of local Postmaster Ashworth, who stated that to the Postal Service "any place is a public place that we serve. . . . [E]very citizen is a customer of ours." (emphasis added).

Because, according to the Postal Service, a public place exists wherever there is a postal customer, and because by the agency's own account, "every citizen is [its] customer," we reach the logical conclusion that, in the agency's view, a public place exists wherever there is a citizen. This definition would classify as "public places" even employees' private homes, at least to the extent that the employee is not alone there. In short, the problem with this interpretation is that it effectively reads language out of the regulation. If the agency had wished to promulgate a regulation that prohibited drinking in uniform while "in the presence of others," it might have done so. However, it did not. Instead, it promulgated a regulation that specifically forbade such activity only "in a public place." (emphasis added). An agency interpretation that effectively eviscerates regulatory language is per se inconsistent with the regulation and may be accorded no deference.

Rejecting the agency's regulatory construction, we now turn to the meaning of the phrase "in a public place." While we need not define its precise contours, we hold

that the VFW post is not a public place by any reasonable construction of the postal regulation. If the Postal Service wishes to further restrict drinking by its off-duty uniformed employees, it may promulgate a new regulation. To be clear, here we express no view on whether such a regulation would constitute an impermissible intrusion on employees' privacy interests.

For the reasons stated above, we conclude that the Board acted in an arbitrary and capricious manner in affirming the agency's action after erroneously deferring to the agency's unreasonable interpretation of its regulation. Accordingly, Gose is to be immediately reinstated to his position, with back pay and credit, for all purposes, for the period of his improper removal from the Postal Service. We also deem Gose not to have breached the terms of the LCA, such that, inter alia, the agency is obligated to comply with its obligations thereunder, including its obligation to remove "all citable disciplinary actions" in Gose's record. We remand to the Board for further action consistent with this opinion.

<u>REVERSED AND REMANDED</u>

Costs to petitioner.