# United States Court of Appeals for the Federal Circuit

2009-5014

ABBOTT LABORATORIES AND U.S. SUBSIDIARIES,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.


Thomas V. Linguanti, Baker & McKenzie LLP, of Chicago, Illinois, argued for plaintiff-appellant. With him on the brief were Robert S. Walton; and Robert W. DeJoy,Jr. and Eric J. Weber, of New York, New York.

Francesca U. Tamami, Attorney, Appellate Section, Tax Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were John A. DiCicco, Acting Assistant Attorney General, Gilbert S. Rothenberg, Acting Deputy Assistant Attorney General, and Kenneth L. Greene, Attorney.

Appealed from: United States Court of Federal Claims

Judge Francis M. Allegra

# United States Court of Appeals for the Federal Circuit

2009-5014

ABBOTT LABORATORIES AND U.S. SUBSIDIARIES,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims in 06-CV-778, Judge Francis M. Allegra.

_____

DECIDED:  July 29, 2009

_____

Before LINN, DYK, and PROST, Circuit Judges.

PROST, Circuit Judge.

Appellant Abbott Laboratories ("Abbott") appeals from the dismissal of its suit in the United States Court of Federal Claims.  Abbott Labs. v. United States, 84 Fed. Cl. 96 (2008).  For the reasons set forth below, we affirm.

## BACKGROUND

Generally, the government must assess any taxes owed within three years of the date the taxpayer filed its return.  26 U.S.C. § 6501(a).  However, 26 U.S.C. § 6501(c)(4) permits the government and the taxpayer to agree to an extension of the assessment period.  If the government receives the benefit of additional time in which to assess any taxes owed, under 26 U.S.C. § 6511(c)(1) the taxpayer receives six months from the end of the assessment period in which to file any claim for a refund.

At the time of the tax years at issue in this case (1987–89), certain provisions of the U.S. Code permitted a U.S. parent company to create a "foreign sales corporation," or FSC (pronounced "fisc"), and by so doing exempt a portion of the parent company's foreign sales income (about 65% of the FSC's profits) from U.S. corporate income tax. See 26 U.S.C. §§ 921–927 (repealed 2000). A FSC could be classified as a "buy/sell FSC," meaning that the parent company sold product to the FSC for resale abroad, or a "commission FSC," meaning that the parent paid a commission to the FSC when the FSC made a foreign sale. See id. § 925; Abbott Labs., 84 Fed. Cl. at 102. Section 925(a) set forth specific transfer pricing rules for buy/sell FSCs, whereas § 925(b)(1) explicitly gave the Secretary of the Treasury the authority to "prescribe regulations setting forth . . . rules which are consistent with the rules set forth in subsection (a) for the application of this section in the case of commissions."

In addition to the tax exemption benefit, the parent company (called the "related supplier") and the FSC also had the option of choosing among various transfer pricing methods to select the one that would yield the largest tax exemption. 26 U.S.C. § 925(a). While the FSC and its related supplier selected a transfer pricing method prior to filing a tax return, in certain circumstances they could request a redetermination of tax liability after filing if they found that an alternative method would have been more beneficial. Temp. Treas. Reg. § 1.925(a)-1T(e)(4). It is the regulation authorizing this redetermination, Temporary Treasury Regulation § 1.925(a)-1T(e)(4), that is at the heart of the dispute in this case.

Abbott created a wholly owned commission FSC named Abbott Trading Company, Inc. ("ATCI"). Abbott and ATCI were "treated as separate taxpayers, filing

separate returns." <u>Abbott Labs.</u>, 84 Fed. Cl. at 100. For tax years 1987–89, Abbott initially calculated ATCI's commissions after grouping transactions by product group. <u>Id.</u> Both Abbott and ATCI then agreed to extend their assessment periods pursuant to § 6501, but while Abbott extended its assessment period to September 30, 1998, ATCI agreed to extend its assessment period only until December 31, 1997. These agreements had the effect of extending the period in which Abbott and ATCI could claim refunds to March 30, 1999, and June 30, 1998, respectively. On June 29, 1998, Abbott requested a redetermination of its tax liability using a transaction-by-transaction method to calculate ATCI's commissions. <u>Id.</u> This redetermination would have had the effect of decreasing Abbott's tax liability for the years in question and increasing ATCI's tax liability by a related amount. <u>See</u> <u>id.</u> at 101.

The government denied Abbott's refund claim because although both Abbott and ATCI's <u>refund</u> periods under § 6511 remained open, ATCI's <u>assessment</u> period under § 6501 had long since expired. Thus, if the government processed and paid Abbott's refund claim, it could not offset that refund by assessing and collecting additional tax revenues from ATCI. In its view, the government had authority to deny Abbott's claim under Regulation § 1.925(a)-1T(e)(4). The relevant portion of Regulation § 1.925(a)-1T(e)(4) reads:

> [1] The FSC and its related supplier would ordinarily determine under section 925 and this section the transfer price or rental payment payable by the FSC or the commission payable to the FSC for a transaction before the FSC files its return for the taxable year of the transaction. . . . [4] In addition, a redetermination may be made by the FSC and related supplier if their taxable years are still open under the statute of limitations for making claims for refund under section 6511 if they determine that a different transfer pricing method may be more beneficial. . . . [6] <u>Any redetermination shall affect both the FSC and the related supplier</u>.

Temp. Treas. Reg. § 1.925(a)-1T(e)(4) (emphasis and bracketed numerals added). At issue here is the sixth sentence, which the government relied upon in denying Abbott's claim. The government interpreted that sentence to require that the § 6501 assessment period must be open for both Abbott and ATCI, since "[t]he inability to assess a deficiency against either FSC or related supplier, as the offset to the claim for refund, clearly prevents the redetermination from 'affecting' both parties."

Abbott then took its request for a refund to the Court of Federal Claims. The court ultimately denied Abbott's motion for partial summary judgment and granted the government's motion for summary judgment, concluding that "amended returns reflecting a redetermination had to be filed while the statute of limitations for assessment was open as to the entity whose income would be increased by the redetermination." Abbott Labs., 84 Fed. Cl. at 108. Abbott now appeals. We have jurisdiction over the appeal under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

This court reviews grants of summary judgment by the Court of Federal Claims de novo. Nat'l Am. Ins. Co. v. United States, 498 F.3d 1301, 1303–04 (Fed. Cir. 2007). The interpretation of a regulation is also a question of law which we review de novo. Yanco v. United States, 258 F.3d 1356, 1362 (Fed. Cir. 2001). While we do not defer to the trial court, an agency's interpretation of its own regulation is entitled to a level of deference even "broader than deference to the agency's construction of a statute, because in the latter case the agency is addressing Congress's intentions, while in the former it is addressing its own." Cathedral Candle Co. v. U.S. Int'l Trade Comm'n, 400 F.3d 1352, 1363–64 (Fed. Cir. 2005). That being said, "an agency's inconsistent

interpretation of its regulation detracts from the deference we owe to that interpretation." Gose v. U.S. Postal Serv., 451 F.3d 831, 837–38 (Fed. Cir. 2006) (citations and quotation marks omitted).

As explained above, the government interprets Regulation § 1.925(a)-1T(e)(4) as imposing two conditions that must be satisfied prior to receiving a redetermination. First, the government argues that the party requesting redetermination must file a request within the § 6511 refund periods for both the FSC and its related supplier. This condition was discussed at length by the U.S. Tax Court in Union Carbide Corp. v. Commissioner, 110 T.C. 375 (1998). Second, pursuant to the sixth sentence's "shall affect" requirement, the government claims that the request also must be filed within each party's § 6501 assessment period. This is because the "requirement that '[a]ny redetermination shall affect both the FSC and the related supplier necessarily refers to a meaningful tax effect.'" Appellee's Br. 22 (alteration in original).

The regulation does not specify the manner in which the redetermination must "affect" both parties. Indeed, although the plain language might conceivably cover a limitless range of effects, even Abbott does not contend that an entirely unrelated effect is contemplated. See Appellant's Br. 30 (interpreting the "shall affect" language to require "that income and expense must be correspondingly and accurately reflected on the books of both the related supplier and the FSC"). We conclude, therefore, that the sixth sentence's "shall affect" requirement is ambiguous. Accordingly, deference is appropriate if the government's interpretation of the regulation's "shall affect" language is not "plainly erroneous or inconsistent with the regulation." Cathedral Candle, 400 F.3d at 1364 (quoting Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945)).

This is true "even when that interpretation is offered in the very litigation in which the argument in favor of deference is made" given that we have "no reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question." Id. (quoting Auer v. Robbins, 519 U.S. 452, 462 (1997)); see Long Island Care at Home v. Coke, 127 S. Ct. 2339, 2349 (2007).

We agree with the Court of Federal Claims that the government's interpretation of the "shall affect" language in Regulation § 1.925(a)-1T(e)(4) is not plainly erroneous or inconsistent with the regulation. First, as the government notes, the FSC provisions were passed after an earlier set of tax provisions, which created an entity called a Domestic International Sales Corporation ("DISC"), were criticized as "an illegal export subsidy in violation of" the General Agreement on Tariffs and Trade ("GATT"). Thus, of necessity the FSC provisions were intended to "pass muster" under the GATT. Appellee's Br. 25. As the Court of Federal Claims pointed out, however, Abbott's interpretation "would grant tax benefits far greater than those afforded by the supplanted DISC provisions" because it "would exempt not some, but all the income shifted to the FSC via the redetermination, and do so for any taxpayer that had agreed to extend the statute of limitations on assessment." Abbott, 84 Fed. Cl. at 107; see also Boeing Co. v. United States, 537 U.S. 437, 456 (2003) ("[E]ven though the purpose of the DISC and FSC statutes was to provide American firms with a tax incentive to increase their exports, Congress did not intend to grant 'undue tax advantages' to firms. Rather, the statutory formulas were designed to place ceilings on the amount of those special tax benefits.") (citation omitted). The government also points out that although technically the FSC must meet minimal substantive requirements (such as separate incorporation),

the fact of the matter is that "a FSC is an artificial construct that exists solely to facilitate the tax benefit afforded by Congress."  Appellee's Br. 26.  Since the FSC is a wholly owned subsidiary of the related supplier, "any redetermination of the related supplier's FSC benefits necessary implicates the FSC, and the only meaningful effect that a redetermination would have on the FSC is a tax effect."  Id. at 26–27.

Most importantly, Abbott interprets the "shall affect" language in Regulation § 1.925(a)-1T(e)(4) to require only that the FSC and related supplier accurately reflect their income and expenses on their books.  As the government points out, however, Abbott's interpretation renders the sixth sentence of Regulation § 1.925(a)-1T(e)(4) superfluous, as this effect is already mandated under Temporary Treasury Regulation § 1.925(a)-1T(e)(5).  Even Abbott seems to recognize this point, noting that "a pervasive theme throughout section 1.925(a)-1T, and specifically within the subsections immediately surrounding (e)(4), is that income and expenses must be correspondingly and accurately reflected on the books of both the related supplier and the FSC." Appellant's Br. 30 (emphasis added).

Finally, we are not persuaded by Abbott's argument that we owe less deference to the government's interpretation because that interpretation is at odds with its position in Union Carbide, 110 T.C. at 375.  Abbott claims that, in the brief filed in that case, "the government stated unambiguously that '[Section 1.925(a)-1T(e)(4)] does not require that the limitations period for assessing a tax under section 6501 be open with respect to a [FSC].'"  Appellant's Reply Br. 18 (alterations in original).

According to the government, the statement in its Union Carbide brief was made "in the context of refuting the taxpayer's argument that the dual § 6511 requirement of

the fourth sentence of Treas. Reg. § 1.925(a)-1T(e)(4) could be <u>supplanted</u> by satisfying the § 6501 limitations period on assessment.  Contrary to the taxpayer's assertion, the Commissioner did not 'oppose an additional requirement under section 6501.'"  The Court of Federal Claims agreed, finding that Abbott took the government's language "out of context" and that "a fair reading of the Commissioner's brief indicates that the entire focus thereof was on the portion of the regulation that required that the refund limitations period of section 6511 be open for both entities and not on the portion requiring that a redetermination 'affect' both such entities."  <u>Abbott</u>, 84 Fed. Cl. at 108 n.19.

We agree that the government did previously state in its <u>Union Carbide</u> brief that "the regulation does not require that the limitations period for assessing a tax under section 6501 be open with respect to" the FSC.  But the <u>Union Carbide</u> case involved only interpretation of the fourth sentence and did not directly involve the question presented here—the interpretation of the sixth sentence of the regulation.  <u>Union Carbide</u>, 110 T.C. at 391–92.  The construction of the sixth sentence was argued by the taxpayer only to show that the government's construction of the fourth sentence was superfluous, and the government's response was limited to that context.  <u>Id.</u>  Indeed, the <u>Union Carbide</u> opinion bears this out.  The Tax Court specifically rejected this argument because "sentence No. 4 and sentence No. 6 serve different functions," and the court disagreed with the taxpayer's "attempt to insert the limitations period of its choosing <u>in lieu of section 6511</u>."  <u>Id.</u> (emphasis added).

Comments by government litigating counsel on appeal addressing peripheral issues are not entitled to deference.[1]  While agency positions articulated in litigation briefs may be entitled to deference, such deference is earned only if the brief represents the agency's considered position and not merely the views of litigating counsel.  In other words, we owe deference only to those considered agency judgments as to the issue directly involved in the litigation, not to the views of litigation counsel.  If the issue is not directly involved, it is unlikely that the agency has made any determination, much less a considered determination, as to the correctness of the position.  Because the construction of sentence six was not directly at issue in Union Carbide, no deference was due the government counsel's offhand comment as to the overall scope of the regulation.

Thus, the interpretation adopted by the government here does not clearly contradict an earlier interpretation that was entitled to deference.  And while it is certainly true that a longstanding interpretation is entitled to greater deference, see United States v. Cleveland Indians Baseball Co., 532 U.S. 200, 219 (2001), even the fact that the government "may have interpreted these regulations differently at different times in their history" is of no import "as long as interpretative changes create no unfair surprise."  Long Island Care at Home, 127 S. Ct. at 2349.  Where, as here, the

---

[1]  See Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 213 (1988) ("Deference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate."); Inv. Co. Inst. v. Camp, 401 U.S. 617, 628 (1971) ("It is the administrative official and not appellate counsel who possesses the expertise that can enlighten and rationalize the search for the meaning and intent of Congress."); Gose, 451 F.3d at 838 ("[T]he interpretation either has to be that of the Secretary or properly imputed to him in some way."); see also Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168–69 (1962) ("The courts may not accept appellate counsel's post hoc rationalizations for agency action . . . .").

government never adopted a contrary interpretation that was entitled to deference, we are not persuaded that the current interpretation creates an "unfair surprise." In addition, the government directs us to prior statements that, while not definitive, at least suggest the interpretation now explicitly embraced. See Appellee's Br. 36–38 (discussing, for example, administrative rulings applicable to the precursor DISC provisions, which Congress "expressly made . . . applicable to FSCs"). The IRS internal Field Service Advice memoranda and the position articulated in the government's briefs are the types of considered determinations that would normally be entitled to deference. Long Island Care at Home, 127 S. Ct. at 2349.

In sum, the requirement that "[a]ny redetermination shall affect both the FSC and the related supplier" is ambiguous. As a result, we owe deference to the government's interpretation "so long as it is reasonable." Hyatt v. Dudas, 551 F.3d 1307, 1311 (Fed. Cir. 2008) (quoting Martin v. Occupational Safety & Health Review Comm'n, 499 U.S. 144, 150–51 (1991)); see also Bowles, 325 U.S. at 414 ("[T]he administrative interpretation . . . becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation."). Further, "[i]n the context of tax cases, the government's reasonable interpretations of its own regulations and procedures are entitled to particular deference." Am. Express Co. v. United States, 262 F.3d 1376, 1383 (Fed. Cir. 2001). Here, the government's interpretation is reasonable in light of the factors considered above, and contrary to Abbott's claim, it is not inconsistent with any prior interpretation that was entitled to deference. Accordingly, the decision of Court of Federal Claims is affirmed.

<u>AFFIRMED</u>