# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
### 2014 MSPB 68

Docket No. CH-4324-13-0386-I-1

**David O. Rassenfoss,**

**Appellant,**

**v.**

**Department of the Treasury,**

**Agency.**

August 22, 2014

David O. Rassenfoss, Florence, Kentucky, pro se.

Daniel C. Mullenix, Esquire, Chicago, Illinois, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member
Member Robbins issues a separate, dissenting opinion.

## OPINION AND ORDER

¶1      The appellant has filed a petition for review of the initial decision, which denied his request for corrective action under the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA).  For the reasons set forth below, we GRANT the petition for review; AFFIRM the initial decision insofar as it found that the appellant failed to prove his USERRA discrimination claim; and REMAND the case to the Central Regional Office for further adjudication of the appellant's USERRA reemployment rights claim in accordance with this Opinion and Order.

BACKGROUND

¶2	The appellant is a GS-12 Appeals Officer. Initial Appeal File (IAF), Tab 1 at 1, Tab 7, Subtab 4a. Effective January 19, 2010,[1] he took an extended period of leave to serve on active duty in the military. *See* IAF, Tab 7, Subtab 4h. He did not return to duty in his Appeals Officer position until March 4, 2011. IAF, Tab 7, Subtab 4c. Thus, in December 2010, when the agency completed his performance appraisal for the period from December 1, 2009, to November 30, 2010, it did not give him a performance rating, but rather, designated him as "Not Ratable." IAF, Tab 7, Subtab 4d, Tab 11 at 10, Tab 13 at 6. Because the appellant did not receive a performance rating in 2010, the agency did not give him a Quality Step Increase (QSI) for that year. IAF, Tab 11 at 10, Tab 13 at 7.

¶3	The appellant filed an appeal with the Board alleging that the agency's failure to award him a QSI in 2010 violated his rights under USERRA, in that he was improperly designated as "Not Ratable" due to his absence for military service and, as a direct result, was not awarded a QSI. IAF, Tab 1, Tab 4 at 4-5. He requested a hearing. IAF, Tab 1 at 2. After holding a hearing, the administrative judge issued an initial decision denying the appellant's request for corrective action. IAF, Tab 15, Initial Decision (ID). She found that: (1) the Board had jurisdiction over the appellant's USERRA appeal; (2) the appellant failed to meet his burden to establish that his military service was a motivating factor in the agency's failure to award him a QSI for the 2010 appraisal period; and (3) the record did not support a finding that the agency violated USERRA by denying the appellant a QSI in 2010. *See* ID.

¶4	The appellant has filed a petition for review, which the agency opposes. Petition for Review (PFR) File, Tabs 1, 3. He argues that his 2009 performance rating should have been considered his rating of record for 2010 because he was

---

[1] It appears that the appellant's last workday was Friday, January 15, 2010, as January 18, 2010 was a federal holiday. *See* IAF, Tab 7, Subtab 4h at 1.

absent performing military service and that he should have received a QSI because it is reasonably certain that he would have been awarded one had he not been absent due to his military service.  PFR File, Tab 1.  He claims that the agency's designating him as "Not Ratable" in 2010 and consequently failing to award him a QSI constitutes discrimination based on military service.  *Id.*  He also argues that QSIs are awarded for sustained outstanding performance and, therefore, the administrative judge erred in finding that, in order to be eligible for a QSI, an employee must have a current annual performance appraisal rating of "Outstanding."[2]  *Id.*

ANALYSIS

The appellant did not meet his burden to establish that the agency discriminated against him in violation of 38 U.S.C. § 4311(a).

Under 38 U.S.C. § 4311(a), a person who performs uniformed service may not be denied reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that service.  An appellant raising a discrimination claim under 38 U.S.C. § 4311 bears the burden of proving that the contested agency decision was based on an improper motivation.  *Clavin v. U.S. Postal Service*, 99 M.S.P.R. 619, ¶ 6 (2005).  The appellant claims the agency discriminated against him on the basis of his military service by

---

[2] The appellant also argues that the administrative judge erred in finding that a QSI is not a benefit of employment.  PFR File, Tab 1 at 4.  However, the administrative judge did not so find.  To the contrary, her finding that the Board had jurisdiction over the appellant's USERRA appeal necessarily required a determination that the appellant's claim that he was denied a QSI constituted an allegation that he was denied a benefit of employment. *See, e.g.*, *Beck v. Department of the Navy*, 120 M.S.P.R. 504, ¶ 8 (2014) (to establish Board jurisdiction over a USERRA appeal, an appellant must allege, inter alia, that he was denied initial employment, reemployment, retention in employment, promotion, or a benefit of employment).  Further, she explicitly stated that, although a QSI is not specifically enumerated in the USERRA statute as a benefit of employment, a performance award could be considered a benefit of employment.  ID at 4-5.

designating him as "Not Ratable" and failing to award him a QSI in 2010. PFR File, Tab 1 at 4, 6-8.

¶6 The agency's manual regarding performance management explains that an employee is "Not Ratable" if: (1) he has less than 60 days performance under a signed performance plan during the appraisal year; (2) his appraisal period has ended; and (3) he is not in work status on the appraisal period ending date. IAF, Tab 7, Subtab 4e at 4. A performance appraisal period may not be extended if the employee is not in work status on the appraisal period ending date. *Id.* An agency Human Resources (HR) Specialist testified at the hearing that the appellant was properly designated as "Not Ratable" in 2010 because his extended absence began less than 60 days after the 2010 appraisal period began, the appraisal period ended while the appellant was still absent, and the appellant was not in a work status on the last day of the appraisal period. *See* Hearing Compact Disc. He further testified that he conducted a review of the agency's records and identified three employees who were absent for extended periods for reasons other than military service and, therefore, were designated as "Not Ratable." *Id.* Moreover, he testified that he was unaware of any employees who met all three criteria to be designated as "Not Ratable" but were not so designated. *Id.*

¶7 A Lead HR Specialist employed by the agency explained, in a declaration made under penalty of perjury, that "[e]mployees who receive a 'Not Ratable' designation on their current performance appraisals would not meet the threshold criterion [to qualify for a QSI], i.e., having received an 'Outstanding' rating of record on their current annual performance appraisal." IAF, Tab 13, Subtab 4 at 1. She further explained that employees who are designated as "Not Ratable" on their current annual performance appraisal do not appear on a report of employees who are screened to determine their entitlement to a QSI. *Id.* She asserted that this procedure is "consistently applied" and, therefore, no employee

who received a "Not Ratable" designation on their current annual appraisal has been granted a QSI. *Id.* at 1-2.

¶8 Based on the foregoing, we find that the appellant has failed to prove that the agency discriminated against him based on his military service. He has produced no evidence establishing that the agency's policies concerning "Not Ratable" designations and eligibility for QSIs are applied inconsistently based on military service.[3]

<u>We remand this appeal for the administrative judge to adjudicate the appellant's USERRA reemployment claim.</u>

¶9 The appellant alleges on review that the agency should have granted him a QSI in 2010 because, based on his "sustained outstanding performance record," including his "Outstanding" performance rating in 2009, this benefit of employment was reasonably certain to have been granted to him had he not been absent performing military service. PFR File, Tab 1 at 5-6. The appellant also raised this argument below. He asserted on his initial appeal form and in his prehearing submission that the agency violated 5 C.F.R. § 353.106, which, inter alia, requires agencies to provide a mechanism by which employees who are absent because of uniformed service can be considered for promotions and other

---

[3] Relying on Article 18, Section 2(B)(1)(a) of the 2009 Collective Bargaining Agreement (CBA) between the agency and the National Treasury Employees Union, the administrative judge concluded that an employee is only eligible for a QSI if, inter alia, he receives an annual performance rating of "Outstanding" for the current year. ID at 5; *see* IAF, Tab 7, Subtab 4j at 7. However, as the appellant notes on review, Article 18, Section 2(B)(1)(a) of the CBA was modified in 2010. PFR File, Tab 1 at 5; IAF, Tab 7, Subtab 4f. The amended provision only states that an employee's "[m]ost recent [Internal Revenue Service] rating of record" must be "Outstanding." IAF, Tab 7, Subtab 4f at 1 (emphasis added). It does not state that an employee who does not have a rating of record for the current year is ineligible for a QSI. To the extent that the agency's procedure for determining QSI eligibility is inconsistent with Article 18, Section 2(B)(1)(a), we find that such a violation is immaterial to the question of whether the agency discriminated against the appellant based on his military service because he has proffered no evidence to dispute the agency's claim that the procedure is applied consistently.

benefits of employment that were reasonably certain to have accrued but for the absence for military service.  IAF, Tab 1 at 3, Tab 11 at 5.  The administrative judge noted in her summary of the prehearing conference the appellant's argument "that had he remained at work it would have been reasonably certain he would have been awarded a QSI."  IAF, Tab 14 at 1.

¶10     Based on the foregoing, we find that, in addition to a discrimination claim, the appellant raised a reemployment claim under USERRA.  A reemployment claim arises under USERRA when an employee claims that an agency has not met its obligations under 38 U.S.C. §§ 4312-4318 following his absence from civilian employment to perform uniformed service.  *Clavin*, 99 M.S.P.R. 619, ¶ 5.  Unlike discrimination cases, an individual's rights under USERRA's reemployment provisions do not depend on the motivation for an agency's action (or inaction), and the agency bears the burden of proving that it met its statutory obligations.  *Id.*, ¶ 6.  Although the administrative judge concluded that the record did not support a finding that the agency violated the anti-discrimination provisions of USERRA, she did not address the question of whether the agency met its burden to prove that it met its reemployment obligations under USERRA.  *See* ID.  Rather, she stated that the Board has jurisdiction over appeals of any person alleging discrimination in federal employment on account of prior military service and that the appellant bears the burden of proving by preponderant evidence that his military service was a substantial and motivating factor in the agency's decision to deny him a benefit of employment.  ID at 3.  Thus, she appears to have analyzed only whether the appellant met his burden to establish his discrimination claim.

¶11     When an administrative judge fails to adjudicate a claim that was properly raised below, it may be necessary to remand the appeal if the record is not sufficiently developed or if the administrative judge's error was prejudicial to a party's substantive rights.  *See Social Security Administration v. Long*, 113 M.S.P.R. 190, ¶ 25 (2010) (when the record is sufficiently developed and the

Board does not rely upon witness demeanor, the Board may adjudicate the case on the record and need not remand it to the administrative judge), *aff'd*, 635 F.3d 526 (Fed. Cir. 2011); *Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision). We first turn to the question of whether the appellant was entitled to a QSI as part of the agency's obligations to restore him upon his return from military service.

¶12      USERRA authorizes the Secretary of Labor to promulgate regulations governing its application to State and private employers. 38 U.S.C. § 4331(a). It similarly authorizes the Director of Office of Personnel Management (OPM) to prescribe implementing regulations applicable to federal agencies. 38 U.S.C. § 4331(b).    However, the statute plainly provides that, in exercising this authority, the OPM Director must consult with the Secretaries of Labor and Defense, and that any resulting regulations "shall be consistent with the regulations pertaining to the States as employers and private employers, except that employees of the Federal Government may be given greater or additional rights."   *Id.*   OPM's regulation stipulates that "agencies have an obligation to consider employees absent on military duty for any incident or advantage of employment that they may have been entitled to had they not been absent." 5 C.F.R. § 353.106(c).    It further instructs that this can be achieved by considering the following three factors: whether the benefit is generally granted to all employees; whether the employee is being treated the same as if he had remained at work; and whether it is reasonably certain that the benefit would have accrued to the employee but for the absence. *Id.* In ascertaining the scope of a federal agency's obligation to a service member upon his or her return to the federal workforce, the Board has historically distinguished between benefits that are dependent on fitness, ability or the exercise of managerial discretion and those that are based on seniority, rewards for length of service, or would have accrued through the mere passage of time. *West v. Department of the Air Force*,

117 M.S.P.R. 24, ¶¶ 8-9 (2011); *Leite v. Department of the Army*, 109 M.S.P.R. 229, ¶¶ 10-11 (2008). Specifically, the Board has applied the "escalator principle" only to the latter category of benefits on the theory that these are the only benefits which would have been reasonably certain to have accrued during the employee's absence. [4]

¶13 However, in 2005, the Department of Labor (DOL) promulgated USERRA regulations that conflict with the Board's precedent. Specifically, DOL rejected the discretionary/nondiscretionary distinction undergirding the Board's approach, and instead, directs employers to adopt a case-by-case approach to determine whether a benefit was reasonably certain to have accrued absent military service. 70 Fed. Reg. 75,246, 75,271. Under DOL's regulations, the reasonable certainty test applies to both discretionary and nondiscretionary benefits and personnel actions. *Id.* For example, relevant factors to consider when assessing whether it is reasonably certain that an employee would have received a discretionary promotion include the returning employee's work history, his or her history of merit increases, and the work and pay history of employees in the same or similar position. 20 C.F.R. § 1002.236(a). We recognize that OPM regulations govern our adjudication of USERRA appeals of federal employees. However, given USERRA's express mandate that OPM's USERRA regulations be consistent with those issued by DOL, we believe that it would undermine Congress' intent for the Board to continue to interpret 5 C.F.R. § 353.106[5] in a manner that is not only at

[4] In the context of reemployment rights, the so-called "escalator principle" refers to the concept that an employee who has been absent due to military service or a work-related injury is entitled to be restored to the position that he or she would have attained but for the absence.

[5] In his dissent, Member Robbins argues that OPM's regulation governing the issuance of a QSI effectively precludes the consideration of such a benefit where the employee was absent during the rating period. However, this case is governed by OPM's USERRA regulations which entitle the appellant to any benefit which would have been reasonably certain to have accrued to him but for his military absence. The only

odds with DOL's prescribed approach, but which affords service members returning to federal employment *less* protection under USERRA than their State government and private sector counterparts. Therefore, to the extent that our holdings in *West* and *Leite* are premised on the assumption that discretionary personnel actions inherently fail the reasonable certainty test, they are hereby OVERRULED.

¶14       Although not precedential and not binding upon us, we note that other federal courts have applied DOL's regulations concerning discretionary promotions and reached similar conclusions. In *Anderson v. Sanford L.P.*, No. 3:06-cv-466, 2008 WL 351227, at \*7 (E.D. Tenn. Feb. 7, 2008), the defendant moved for summary judgment in a USERRA appeal concerning the employer's failure to provide a returning service member with a pay increase. In relevant part, the defendant argued that pay increases were awarded at the employee's supervisor's discretion after a performance evaluation and that the employee did not receive a performance evaluation while absent performing military service. *Id.* Applying 20 C.F.R. § 1002.236, the District Court denied the defendant's motion, reasoning that the employee would have received a performance evaluation were it not for his military service and that a reasonable jury could conclude, based on his history of salary increases following performance evaluations, that he was reasonably certain to have received a pay increase were it not for his military service. *Id.* In particular, the employee had received raises in each of the three years immediately preceding his military service, as well as in the year immediately following the completion of his military service. *Id.*

---

question presented here is whether to interpret OPM's "reasonably certain" test in a manner consistent with DOL's USERRA regulations. We believe that USERRA on its face compels us to do so. Any potential resulting conflict with other OPM regulations is not for us to resolve.

¶15      Similarly, in *Talley v. Shaw Maintenance, Inc.*, No. 1:11-cv-1044, 2012 WL 3961280, at \*7 (W.D. Ark. Sept. 10, 2012), the District Court explicitly rejected the defendant's argument that merit-based pay raises cannot be reasonably certain for purposes of USERRA because their discretionary nature makes them inherently uncertain, noting that this argument overlooks the relevant factors set forth in 20 C.F.R. § 1002.236 to determine whether a merit increase was reasonably certain to have occurred. The District Court thus denied the defendant's motion for summary judgment, finding that, because the employee had a long history of pay increases prior to his military leave and all of his co-workers received at least one merit-based pay raise during his absence, a question of fact existed as to whether he was reasonably certain to have received a pay increase if not for his military leave, and a jury could reasonably so conclude. *Id.* at 6-7.

¶16      In the instant appeal, there are some factors weighing in favor of finding that the appellant was reasonably certain to have received a QSI had he not been absent performing military service. The appellant's overall performance was rated as "Outstanding" in both 2008 and 2009—the two years immediately preceding his military absence. IAF, Tab 7, Subtabs 4i, 4k. Further, when the appellant returned from military service, he again received an overall rating of "Outstanding" in 2011 and was offered a QSI.[6] IAF, Tab 7, Subtab 4b.

¶17      Notwithstanding these factors, we find it necessary to remand this appeal for further adjudication because we do not have sufficient information to reach a conclusion regarding the appellant's entitlement to a QSI as part of his restoration to duty. For instance, we have no information regarding the actual frequency with which QSI-eligible employees in the same or similar position as the appellant are granted or denied QSIs.

---

[6] The appellant elected to receive a time-off award in lieu of a QSI. IAF, Tab 7, Subtab 4b at 6.

¶18        Moreover, in a USERRA appeal, an administrative judge should inform the parties of their respective burdens of proof and the type of evidence necessary to satisfy those burdens. *Brasch v. Department of Transportation*, 101 M.S.P.R. 145, ¶ 14 (2006). The administrative judge issued a jurisdictional order identifying the two types of USERRA claims and stating that, with respect to reemployment claims, the agency bears the burden of proving by a preponderance of the evidence that it met its statutory obligations under USERRA. IAF, Tab 3 at 2-4. However, she did not cite to or discuss the relevant provisions of 20 C.F.R. part 1002, so the agency was not notified of the information to be considered in determining whether a personnel action was reasonably certain to have occurred absent military service. *Id.*

¶19        We therefore remand this appeal to the Central Regional Office for further adjudication. If appropriate, the administrative judge may allow the parties limited discovery solely on the appellant's reemployment claim, and may conduct an additional hearing.

## ORDER

¶20        For the reasons discussed above, we REMAND this case to the Central Regional Office for further adjudication in accordance with this Opinion and Order.


FOR THE BOARD:


_____
William D. Spencer
Clerk of the Board
Washington, D.C.

<u>DISSENTING OPINION OF MEMBER MARK A. ROBBINS</u>

in

*David O. Rassenfoss v. Department of the Treasury*

MSPB Docket No. CH-4324-13-0386-I-1

¶1      I cannot subscribe to the notion that someone who was not given an annual performance rating due to an absence from the workplace (for whatever reason), could be assumed with reasonable certainty to have achieved a specific level of performance but for his absence.  As is said in the financial investment community, "past performance is not a guarantee of future results."

¶2      Inviting consideration of a reasonable certainty that the appellant would have received an outstanding rating but for his leave of absence to serve in the armed forces is contrary to uniformly applied agency policy and, in my opinion, neither required by law or regulation, nor consistent with good public policy.

¶3      For over a decade, the federal government has struggled to bring annual employee ratings back into the world of objective, standardized, measurable reality.  Myriad studies illustrate the grade inflation that has infested this annual process over the years.  Underlying this problem is the assumption that once a rating level is attained an employee's achievement remains at that level absent the emergence of astounding professional deficiencies in succeeding years.

¶4      Without questioning the ratings of the appellant's past professional performance, or an assumption that upon resuming his responsibilities he will again achieve an outstanding rating for his work, it is simply not possible to determine with reasonable certainty how he would have performed in his more than 1 year away from the agency.  No one is outstanding always.

¶5      As the majority opinion notes, the agency's manual regarding performance management explains that an employee is "Not Ratable" if:  (1) he has less than 60 days performance under a signed performance plan during the appraisal year; (2) his appraisal period has ended; and (3) he is not in work status on the

appraisal period ending date. Initial Appeal File (IAF), Tab 7, Subtab 4e at 4. This policy applies to all employees regardless of the reason for their absence.

¶6        The majority relies on regulations promulgated by the Department of Labor (DOL), and overrules agency policy and long-standing Board case law precedent, citing the Uniformed Services Employment and Reemployment Rights Act's (USERRA) mandate that the DOL's and the Office of Personnel Management's (OPM) regulations on the subject must "be consistent." Majority Opinion, ¶ 13. Yet, although likely not intentional, the DOL regulations are internally inconsistent, contrary to OPM regulations setting forth the criteria for granting quality step increases (QSIs), and at odds with the requirements of USERRA and the legislative intent behind them. And even without these shortcomings, I question the level of deference the Board owes to DOL regulations given the fact that appellants may bring USERRA actions either to the DOL or the Board, and if they come to the Board after exhausting the DOL process, we review the matter de novo.

¶7        DOL regulations state:

> [i]f the employee is reemployed in the escalator position, the employer must compensate him or her at the rate of pay associated with the escalator position. The rate of pay must be determined by taking into account any pay increases, differentials, step increases, merit increases, or periodic increases that the employee would have attained with ***reasonable certainty*** had he or she remained continuously employed during the period of service. In addition, when considering whether merit or performance increases would have been attained with reasonable certainty, an employer ***may*** examine the returning employee's own work history, his or her history of merit increases, and the work and pay history of employees in the same or similar position.

20 C.F.R. § 1002.236(a) (emphasis added).[1]

---

[1] As the majority correctly notes, Majority Opinion, ¶ 12 n.4, under the "escalator principle" concept, a returning service member "does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would

¶8        I agree with the majority that these provisions have moved away from our historic focus on whether the action is discretionary or nondiscretionary. But the consideration of rate of pay following military service is still linked to reasonable certainty. In addition, the language regarding both merit increases and employee work history is permissive, not mandatory. In this case, the agency has considered this possibility and as a matter of policy has rejected it.

¶9        Following this permissive language, however, is a potentially ambiguous example: "if the employee missed a merit pay increase while performing service, but qualified for previous merit pay increases, then the rate of pay *should* include the merit pay increase that was missed" (emphasis added). It is interesting that DOL uses the term "should" rather than the unequivocal terms "must" or "shall." Ambiguity is avoided if "should" is "[u]sed to express conditionality or contingency,"[2] thereby denoting merely a guideline or recommendation whenever noncompliance with the specification is permissible. This definition is consistent with the permissive nature of the controlling DOL regulation language and unlike the alternative, does not completely abandon any element of reasonable certainty. *Id*.

¶10       In contrast to DOL's confusing regulatory guidance are the regulations promulgated by OPM regarding QSIs:

> A quality step increase *shall not be required* but may be granted only to--(a) An employee who receives a rating of [outstanding] . . . or (b) An employee who, when covered by a *performance appraisal program* that does not use [outstanding] -- (1) Receives a rating of record at the highest summary level used by the program; and (2) Demonstrates sustained performance of high quality significantly

have occupied had he kept his position continuously during the war." *Tilton v. Missouri Pacific Railroad Co.*, 376 U.S. 169, 174 (1964). However, the escalator principle "moves" in both directions, because it also could mean that, but for the period of uniformed service, the employee could have been demoted, transferred, or laid off from his or her job, depending upon the circumstances. 20 C.F.R. § 1002.191.

[2] Websters II New Riverside University Dictionary (1984) at 1078.

above that expected at the "Fully Successful" level in the type of position concerned, as determined under ***performance-related criteria*** established by the agency.

5 C.F.R. § 531.504 (emphasis added).

¶11     OPM regulations make clear that a QSI is not required under any circumstances. And when given it must be consistent with performance-related criteria in a performance appraisal program. An employee's absence from his or her position during the appraisal year precludes the performance of work-related responsibilities. In such a case there are no performance-related criteria to consider and there is no appraisal program to apply.

¶12     Regarding regulatory deference, it seems to me we owe the same amount of deference to OPM regulations and Department of Treasury policy in this manner as we owe to conflicting regulatory guidance from the DOL. *See Gose v. U.S. Postal Service*, 451 F.3d 831, 840 (Fed. Cir. 2006).

¶13     But finally, and in my opinion most persuasively, the statutory language and legislative intent of USERRA itself, and the history of its judicial and Board application, are clear and unambiguous, and under the circumstances need not be overruled.

¶14     USERRA provides that a person who performed uniformed service for more than 90 days is entitled to reemployment in the position in which he would have been employed if his continuous employment had not been interrupted by such service, or a position of like seniority, status and pay, the duties of which he is qualified to perform. 38 U.S.C. § 4313(a)(2)(A). A Senate Report indicates that section 4313 was intended to reaffirm the escalator principle as first enunciated by the Supreme Court in *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 284-85 (1946). S. REP. NO. 103-158, at 52 (1993). In *Fishgold*, the Supreme Court explained that the escalator principle protects a returning service member from receiving "a job inferior to that which he had

before entering the armed services."[3]  328 U.S. at 284.  Thus, he must be restored without any loss of seniority.  *Id.*

¶15    A related statutory provision provides that, with respect to "rights and benefits not determined by seniority," a returning service member is entitled to the same rights and benefits generally provided to employees having similar seniority, status and pay who are on furlough or leave of absence.  38 U.S.C. § 4316(b)(1)(B); *Fishgold*, 328 U.S. at 284 (a returning service member shall be considered as having been on furlough or leave of absence during his period of service, with all of the insurance and other benefits accruing to employees on furlough or leave of absence).  Indeed, the Senate Report states that the escalator principle applies to perquisites of seniority, which may be determined by considering whether it is reasonably certain that the benefit would have accrued but for the military service and whether the benefit is a reward for length of service rather than a form of short-term compensation for services rendered.  S. REP. NO. 103-158, at 57-58; *see also Foster v. Dravo Corp.*, 420 U.S. 92 (1975) (returning veteran not entitled to full vacation benefits for years in question, even though his failure to satisfy substantial work requirement upon which the benefits were conditioned was due to his serving in the military for portions of those years, as vacation benefits were intended as a form of short-term deferred compensation for work performed and the right to benefits did not accrue automatically as function of continued association with employer).

¶16    A QSI is not a perquisite of seniority.  Under the agency's uniformly-applied policy, employees returning from extended leaves of absence,

---

[3] While a returning service member is not expected to be placed in an inferior job, that does not mean he would be entitled to a promotion.  *McKinney v. Missouri-Kansas-Texas Railroad*, 357 U.S. 265 272 (1958) (promotion to a new or vacant job for returning veteran was explicitly dependent not "simply on seniority or some other form of automatic progression" but also on "fitness and ability and the exercise of a discriminating managerial choice" and in keeping with the applicable collective bargaining agreement providing for bidding process).

including for leave due to military service, are not considered for QSIs because they do not receive performance ratings for that period. Thus, the appellant is not entitled to a QSI because other employees who are on furlough or an extended leave of absence are not entitled to this benefit. *See* 38 U.S.C. § 4316(b)(1)(B); *see also Rogers v. City of San Antonio*, 392 F.3d 758, 764 (5th Cir. 2004) ("USERRA does not grant escalator protection to service members' non-seniority rights and benefits but provides only that the employer treat employees absent because of military service equally with employees having similar seniority, status, and pay who are on comparable non-military leaves of absence");[4] *see also* 20 C.F.R. § 1002.150 (the non-seniority rights and benefits to which an employee is entitled during a period of military service are those that the employer provides to similarly-situated employees).

¶17 In the present matter, I would simply modify the initial decision to address the appellant's reemployment claim, and affirm the denial of the appellant's request for corrective action. I agree with the administrative judge's determination that "the appellant is entitled to a QSI on the same terms of any other employee who is on furlough or leave of absence." IAF, Tab 15, Initial Decision. That is to say, he is not entitled to a QSI. Although the initial decision improperly analyzes the reemployment claim by omitting the agency's burden of proof and by conflating the discrimination and reemployment concepts, these errors were not harmful because the appellant was not entitled to a QSI. In so finding, we would not need to reach the question of whether *Leite v. Department*

---

[4] Decisions by circuits other than the Federal Circuit are persuasive, but not controlling, authority before the Board. *Gende v. Department of Justice*, 35 M.S.P.R. 518, 523 (1987).

*of the Army*, 109 M.S.P.R. 229 (2008), and other Board case law must be overruled in light of the Department of Labor's 2005 regulations.


_____
Mark A. Robbins
Member