NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ANGELA HOWARD,**
*Petitioner*

**v.**

**DEPARTMENT OF DEFENSE,**
*Respondent*

---

2025-1506

---

Petition for review of the Merit Systems Protection Board in No. DC-1221-23-0349-W-1.

---

Decided:  November 5, 2025

---

ANGELA HOWARD, Fort Belvoir, VA, pro se.

BRYAN MICHAEL BYRD, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by ELIZABETH MARIE HOSFORD, PATRICIA M. MCCARTHY, BRETT SHUMATE.

---

Before DYK, TARANTO, and CHEN, *Circuit Judges.*

PER CURIAM.

Angela Howard was employed by the U.S. Department of Defense (agency) as a Clinical Laboratory Scientist at an agency hospital blood bank. While she was still in probationary status, the agency terminated her employment, and she then sought corrective action from the Merit Systems Protection Board, arguing that her termination violated whistleblower-protection provisions of 5 U.S.C. § 2302 because it was in retaliation for protected disclosures—particularly, that the agency was impairing her ability to take time for meal breaks during her work shifts. The agency responded, as relevant here, that it terminated Ms. Howard's employment because of her conduct and performance, not because she made complaints. The Board denied relief. While concluding that Ms. Howard had exhausted her administrative remedies and had made protected disclosures that were a contributory factor in the termination, the Board determined that the agency had proved by clear and convincing evidence that it would have terminated her employment even in the absence of the protected disclosures. *See Howard v. Department of Defense*, No. DC-1221-23-0349-W-1, 2023 WL 9777265 (M.S.P.B. Nov. 13, 2023) (*2023 Decision*); *Howard v. Department of Defense*, No. DC-1221-23-0349-W-1, 2025 WL 33518 (M.S.P.B. Jan. 3, 2025) (*2025 Decision*). On Ms. Howard's appeal, we affirm.

I

Ms. Howard started working as a Clinical Laboratory Scientist at Fort Belvoir Community Hospital in June of 2020. Agency's Supplemental Appendix (S. Appx.) 156. Her appointment to the position was subject to a two-year probationary period. *Id.* After her initial supervisor left the agency in April 2021, Ms. Howard reported to the same interim supervisor until her removal on August 6, 2021. S. Appx. 183, 125.

In May 2021, Ms. Howard emailed her interim supervisor, expressing concerns that she was not being allowed

to take meal breaks during her shifts. S. Appx. 185. The interim supervisor replied to her email with assurances that he would contact Ms. Howard's union representative and work with the hospital's leadership to address the issue. *Id.* During the next few weeks, Ms. Howard contacted her union representative, as well as the Chief of Labor Management and Employee Relations, among other officials, to further complain about the alleged denial of meal breaks. S. Appx. 193–200. The agency investigated workloads in the blood bank and found that employees in Ms. Howard's position had not informed management of any inability to take meal breaks. S. Appx. 166–68.

As the back-and-forth between Ms. Howard and the agency regarding meal breaks continued, her interim supervisor learned of or witnessed workplace conflict problems, resistance to feedback, and performance deficiencies. S. Appx. 127–133, 177–78. In a July 2021 memorandum, Ms. Howard's interim supervisor identified five examples of her deficient performance, including her failure to: (1) summarize and review training slides regarding a new internal agency system, *2023 Decision*, at 38;[1] (2) complete or respond to requests for status updates regarding a Validation Script, which put the blood bank at risk of missing a deadline, *2023 Decision*, at 30–32; S. Appx. 187; (3) listen to her interim supervisor's instructions to limit contacts of subject-matter experts to certain categories of questions, S. Appx. 201–03; (4) complete the corrective action of a Quality Indicator Performance Report after she observed that a patient had been misregistered under the wrong medical number, creating a patient safety risk, *2023 Decision*, at 32–35; S. Appx.137–41, 152–53; and (5) take a timely

---

[1] For the *2023 Decision*, we cite the page numbers on the administrative judge's opinion in the Supplemental Appendix. *See* S. Appx. 16–79.

corrective action upon discovering a mistake in a special blood order, S. Appx. 154–55, 191–92. *See* S. Appx. 177–78.

In August 2021, after receiving her interim supervisor's memorandum, a Human Resources Specialist recommended Ms. Howard's termination from her position, noting that her performance was unlikely to improve once her probationary period ended. *2023 Decision*, at 53–56; S. Appx. 150–51. Concluding that Ms. Howard's conduct adversely affected workplace efficiency and raised issues of patient safety, her interim supervisor signed her termination letter. *2023 Decision*, at 52; S. Appx. 147–49. Ms. Howard then exhausted her administrative remedies with the Office of Special Counsel and filed an Individual Right of Action (IRA) appeal with the Board. *2023 Decision*, at 12–13; *see* 5 U.S.C. §§ 1214(a)(3), 1221(a).

The Board-assigned administrative judge issued an initial decision after conducting a multi-day hearing, at which ten witnesses testified. *2023 Decision*, at 1–64. In the initial decision, the administrative judge found that while Ms. Howard's complaints about the alleged lack of meal breaks amounted to protected disclosures, and those protected disclosure were a contributing factor in Ms. Howard's termination, the agency proved by clear and convincing evidence that it would have terminated her employment even in the absence of the protected disclosure. *2023 Decision*, at 24–25, 63. Ms. Howard petitioned for full Board review of the administrative judge's findings. S. Appx. 94. The Board considered the agency's evidence and affirmed the administrative judge's findings, which became the Board's final decision. *2025 Decision*, at *1–3.

Ms. Howard timely petitioned for review by this court. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## II

Under the statute defining the scope of our review of the Board decision, we may set aside the Board's decision here only if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). We review the Board's factual findings for substantial-evidence support. *Knox v. Department of Justice*, 125 F.4th 1059, 1064 (Fed. Cir. 2025). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Consolidated Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229 (1938), even if an opposite conclusion might also be supportable, *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 619–20 (1966).

A petitioner in an IRA appeal seeking corrective action for alleged whistleblower reprisal must demonstrate that she made a protected disclosure under 5 U.S.C. § 2302(b)(8) and that the protected disclosure was a contributing factor in the agency's decision to take a personnel action, such as removal from employment, as defined by 5 U.S.C. § 2302(a)(2)(A). *See* 5 U.S.C. § 1221(e)(1); *Cahill v. Merit Systems Protection Board*, 821 F.3d 1370, 1373 (Fed. Cir. 2016). If the petitioner makes that showing, relief may nevertheless be denied if the agency proves by clear and convincing evidence that it would have taken the same personnel action even in the absence of the protected disclosure. *See* 5 U.S.C. § 1221(e)(2); *Miller v. Department of Justice*, 842 F.3d 1252, 1257 (Fed. Cir. 2016). Analysis at that stage is to include, but not necessarily be limited to, consideration of the following factors: "the strength of the agency's evidence in support of its personnel action; the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and any evidence that the agency takes similar actions against employees who are not whistleblowers but who are

otherwise similarly situated." *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999); *see Miller*, 842 F.3d at 1257.

We discern no reversible error in the Board's decision in this matter.

## A

Ms. Howard argues that the Board committed reversible errors regarding the protected disclosures related to meal breaks, the knowledge-and-timing test for the contributory-factor element of her claim, and the *Carr* factors. *See* Petitioner's Br. at 7–12, 23. We are unpersuaded by these arguments.

The Board explicitly adopted, and neither party challenged before the full Board, the administrative judge's affirmative determination that Ms. Howard's complaints about meal breaks amounted to protected disclosures under 5 U.S.C. § 2302(b)(8). *See 2025 Decision*, at *1. Likewise, the administrative judge affirmatively determined—after expressly considering the knowledge-and-timing test consistent with 5 U.S.C. § 1221(e)(1)—that these disclosures were a contributing factor in the decision to terminate Ms. Howard. *2023 Decision*, at 24–25; *see Kewley v. Department of Health and Human Services*, 153 F.3d 1357, 1362 (Fed. Cir. 1998) (explaining that, under § 1221(e), "circumstantial evidence of knowledge of the protected disclosure and a reasonable relationship between the time of the protected disclosure and the time of the personnel action will establish, *prima facie,* that the disclosure was a contributing factor to the personnel action" (internal citation and quotation marks omitted)). The administrative judge found that Ms. Howard satisfied the knowledge-and-timing test, and the Board adopted all factual findings of the administrative judge. *2023 Decision*, at 24–25; *2025 Decision*, at *1.

Regarding the issue decided adversely to her—whether the agency would have terminated her employment even in the absence of the protected disclosures—Ms. Howard criticizes the Board's evaluation of the *Carr* factors. Petitioner's Br. at 13, 17, 22–24. She has not, however, shown reversible error on the Board's determination on this issue.

The Board weighed the *Carr* factors and found that the agency successfully rebutted Ms. Howard's prima facie case of retaliation. *2023 Decision*, at 26–63. For the first factor, regarding the strength of the agency's evidence in support of its personnel action, the Board found that the agency's reasoning for Ms. Howard's termination was supported by strong evidence demonstrating insubordination, deficient performance, and conduct that risked patient safety. *2023 Decision*, at 52–53; *see* S. Appx. 177–78. For the second factor, regarding any motive for agency officials to retaliate, the Board found that the agency "had a limited motive to retaliate" but it "was not strong," given "the lack of consequences or belief that the disclosure had merit or would result in the need for change." *2023 Decision*, at 60–61. That finding—made by the administrative judge, not challenged by Ms. Howard before the full Board, *see 2025 Decision*, at *1; S. Appx. 94–115—has substantial-evidence support in, for example, the action of relevant agency officials attempting to address the issue raised by her complaints, *2023 Decision*, at 60–61; S. Appx. 193–200. For the third factor, regarding whether the agency took similar actions against similarly situated, non-whistleblower employees, the Board considered whether other employees, identified by Ms. Howard, were similarly situated but had been treated differently. *2023 Decision*, at 62–63. It gave this factor little weight because the other employees identified by Ms. Howard were not probationary or otherwise were not adequate comparators. *Id.*

On this record, the Board committed no error in giving the first *Carr* factor the greatest weight and finding that the agency has proved by clear and convincing evidence

that it would have terminated Ms. Howard's employment even in the absence of her protected disclosures.

## B

Ms. Howard argues that the Board failed to consider certain evidence revealing negligence in supervision by an individual who she claims was "in material fact [her] official supervisor" at the time of her termination, as well as evidence that her interim supervisor did not have the authority to terminate her. Petitioner's Br. at 4–8. But an IRA appeal is narrow in scope—it is "limited to the merits of allegations of violations of the Whistleblower Protection Act." *Young v. Merit Systems Protection Board*, 961 F.3d 1323, 1327–28 (Fed. Cir. 2020). The present arguments might be relevant as affirmative defenses or charges of harmful procedural in different contexts, but Ms. Howard has not shown how these arguments are relevant to the IRA appeal. *See id.*; 5 C.F.R. § 1209.2(c) (denying an appellant the opportunity to raise affirmative defenses in an IRA appeal). Nor, in any event, has she established how this evidence could alter the findings on the whistleblower issue that the Board resolved against her.

## C

In her remaining arguments, Ms. Howard contends that the Board was "complicit[ ] in the agency's bad-faith tactics" by denying her affirmative defense, limiting certain testimony, and acquiescing in the agency's "deliberate concealment" of evidence. Petitioner's Br. 24. Ms. Howard's arguments regarding the Board's bias amount to assertions that the Board abused its discretion in its decision to uphold her termination. The Board "abuses its discretion when 'the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors.'" *Tartaglia v. Department of Veterans Affairs*, 858 F.3d 1405, 1407–08 (Fed. Cir. 2017) (quoting *Gose v. United States Postal Service*,

451 F.3d 831, 836 (Fed. Cir. 2006)).  Ms. Howard has not shown any such abuse of discretion.

Ms. Howard's accusations are not substantiated by record evidence.  Instead, the administrative judge properly examined the evidence relevant to Ms. Howard's IRA appeal, while excluding evidence as required by 5 C.F.R. § 1209.2(c).  To demonstrate that either the administrative judge or the Board acted with bias, Ms. Howard would have needed to make a showing of "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Bieber v. Department of the Army*, 287 F.3d 1358, 1362 (Fed. Cir. 2002) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).  Ms. Howard has not provided evidence of bias that would meet that high burden, and nothing in the initial or final decision reveals such bias.

### III

We have considered Ms. Howard's other arguments and find them unpersuasive.  For the foregoing reasons, we affirm the Board's final decision.

The parties shall bear their own costs.

**AFFIRMED**